**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

|  |  |  |
|---|---|---|
| MICHELE RICCITELLI AS TRUSTEE IN BANKRUPTCY FOR G.D.G. SRL, Plaintiff, | : : : : | |
| V. | : : | CASE NO. 3:08CV01783(DJS) |
| ELEMAR NEW ENGLAND MARBLE AND GRANITE, LLC A/K/A ENE, Defendant. | : : : : | |

**RULING ON THE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

The Plaintiff, Michele Riccitelli as Trustee in Bankruptcy

for G.D.G. srl ("GDG"), brings this diversity action against

Defendant, Elemar New England Marble and Granite, LLC ("Elemar").

This is an action for breach of contract, arising out of Elemar's

alleged failure to pay the price of stone goods GDG claims it

sold and shipped to Elemar.

Now pending before the court is the Plaintiff GDG's summary

judgment motion.  For the reasons set forth below, the motion for

summary judgment (**Dkt. # 25**) is **DENIED**.

**FACTS**

The Plaintiff Michele Riccitelli, an Italian citizen, is the

Trustee in Bankruptcy for G.D.G. srl, a corporation organized

under the laws of, and with a place of business in, Italy.  The

Defendant, Elemar New England Marble and Granite, LLC, is a

company located in New Haven, Connecticut.  Elemar is in the

business of selling granite, marble and other decorative stone

-1-

supplies to consumers and contractors for end-use, particularly for use in homes and businesses as countertops.

There are very few material facts that are undisputed.  The parties agree that prior to the shipments of goods at issue in this action, GDG had on other occasions sold stone goods to Elemar.  They agree it was their custom or practice for Elemar to pay for goods sold to it by GDG in U.S. dollars.  Both parties apparently agree that stone goods were shipped by GDG to Elemar on nine occasions between approximately December 2002 and September 2003 as reflected in the nine invoices submitted by GDG in support of its summary judgment motion.

Both parties also agree that on January 20, 2004, Elemar received a registered letter from the Plaintiff Riccitelli seeking payment in the stated amount of "Euro 201.959,87#," [sic] and that on January 28, 2004, Earl Harris, President of Elemar, sent a fax to the Plaintiff Riccitelli responding to her registered letter and stating that "the following invoices are open on E.N.E. accounts payable to G.D.G. is a total of 10-Invoices.  Numbers 377, 348, 18, 64, 102, 144, 151, 234, 220, & 266[1].  They Total $200,238.11 U.S. Dollars."  (Dkt. # 25-3, pp. 51,53).

Beyond the facts noted above, the parties are in almost total disagreement with regard to the material facts.  GDG

---

[1] The Plaintiff's claims relate to shipments reflected in nine invoices numbered as follows: 345, 377, 18, 64, 102, 144, 151, 220, and 266.  (Dkt. # 1, ¶ 8).

contends that the nine shipments of stone goods at issue were sales made pursuant to an "open account"[2] contract with Elemar. The Defendant Elemar responds that it was the custom or practice of the parties that goods would be shipped by GDG only upon the request or order of Elemar, that Elemar did not order or request the goods that were shipped and that, as a result, there was no contract between the parties as to these shipments of goods.

The Plaintiff alleges that the Defendant has failed to pay for any of the nine shipments of stone goods.  The Plaintiff further alleges that Elemar neither rejected the goods in a timely manner nor claimed in a timely manner that the goods were defective.  The Defendant asserts that it paid in full for the shipment reflected in  Invoice No. 345 by way of its check numbered 1050.  Elemar further claims that the goods that are the subject of the other eight invoices were defective to the point of being non-conforming to the prior practices and conduct of the parties, that Elemar rejected the goods because they were defective, and that Elemar notified GDG of its rejection of the non-conforming goods in a timely manner.

Elemar has provided a quality control sheet for each invoice and shipment with handwritten comments noting defects in the stone goods.  The quality control sheet for invoice 377

---

[2] According to the Plaintiff, an "open account" is "an account of credits, debits, receipts, and expenditures between two individuals or companies, usually providing for settlement at the end of specified accounting periods." (Dkt. # 48, pp. 7-8)

contains the following handwritten comments: "wheel marks on surface," "bad pitting," and "reject."  The quality control sheet for invoice 18 contains the comments: "cracks on all slabs," "not saleable," and "send inspection credit."  The quality control sheet for invoice 64 contains the comments: "G.V. bad resin application," "very bad cracks = BP, Violetta," and "broken slabs A.F.".  The quality control sheet for invoice 102 contains the comments: "Giallo resin problem" and "pits in = I.P. & Giallo Helena."  The quality control sheet for invoice 144 contains the comments: "very bad packaging," "lots of damage," and "should reject."  The quality control sheet for invoice 151 contains the comments: "Costa too small to sell," "blemishes throughout Baltic, Vyara," "large veins bad finish," "we must get some resolution?," and "sent GDG 7/12/03."  The quality control sheet for invoice 220 contains the comments: "cracks & fissures everywhere," "this was not ordered!," and "report to GDG."  The quality control sheet for invoice 266 contains the comments: "Madacascar too small," Costa Green bad polish," "Blue Pearl cracks & pits," and "report sent to GDG 10/12/03."  (Dkt. # 47-1, pp. 12-20).

In an affidavit submitted by the Defendant, Earl Harris, the President of Elemar, avers that "[e]ach of the shipments represented by the subject invoices was rejected for the numerous defects described in the quality control sheets which made the goods unmerchantable."  (Id. at p. 2).  Mr. Harris further

-4-

states that "these sheets and the comments written on them would have been sent to GDG shortly following inspection of the goods by me or other representatives of Elemar."  (Id.).  For its part, the Plaintiff alleges that "Defendant never sent such timely rejections to the Plaintiff or GDG."  (Dkt. # 48, p. 6).

While the parties do not dispute that they exchanged communications in January 2004 regarding the alleged debt, they disagree as to the intent of Elemar's January 28, 2004 response to the January 20, 2004 letter from Riccitelli.  The Plaintiff maintains that "[t]he January 28, 2004 fax from Defendant ENE, written in response to a registered letter seeking collection of a debt, clearly acknowledges Defendant owes money to Plaintiff." (Dkt. # 48, p. 9).  In his affidavit, Mr. Harris states that "[t]he letter dated January 28, 2004. . . is not intended to be an admission of a debt.  Nowhere in that letter did I admit that Elemar owed the amount stated.  I intended that letter to clarify the amount that was in dispute between the parties.  This letter was sent in response to the letter from the plaintiff. . . stating its amount in demand in the wrong currency.  I wanted to clarify for the plaintiff that any amounts the plaintiff thought were due should be stated in U.S. dollars, not Euros."  (Dkt. # 47-1, p. 2).

The Plaintiff filed her breach of contract complaint on November 21, 2008, seeking $214,919.50 plus accrued interest for

allegedly unpaid invoices 345, 377, 18, 64, 102, 144, 151, 220, and 266.

### STANDARD

A motion for summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56.  "The burden is on the moving party 'to demonstrate the absence of any material factual issue genuinely in dispute.'" American International Group, Inc. v. London American International Corp., 664 F.2d 348, 351 (2d Cir. 1981) (quoting Heyman v. Commerce & Industry Insurance Co., 524 F.2d 1317, 1319-20 (2d Cir. 1975)).  The party opposing the motion "may not rely merely on allegations or denials in its own pleadings; rather, its response must- by affidavits or as otherwise provided in this rule- set out specific facts showing a genuine issue for trial."  Fed. R. Civ. P 56(e)(2).

Summary judgment is appropriate if, after discovery, the nonmoving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof". Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that

there be no *genuine* issue of *material* fact.  Anderson v. Liberty

Lobby, Inc., 477 U.S. 242, 247-48 (1986)(emphasis in original).

The materiality inquiry "is the substantive law's identification

of which facts are critical" and is a "criterion for categorizing

factual disputes in their relation to the legal elements of the

claim and not a criterion for evaluating the evidentiary

underpinnings of those disputes."  Id. at 248.

The Court must view all inferences and ambiguities in a

light most favorable to the nonmoving party.  See Bryant v.

Maffucci, 923 F.2d 979, 982 (2d Cir. 1991).  "Therefore, not only

must there be no genuine issue as to the evidentiary facts, but

there must also be no controversy regarding the inferences to be

drawn from them."  Donahue v. Windsor Locks Bd. Of Fire

Commissioners, 834 F.2d 54, 57 (2d Cir. 1987).  "[S]ummary

judgment will not lie if the dispute about a material fact is

'genuine,' that is, if the evidence is such that a reasonable

jury could return a verdict for the nonmoving party."  Anderson,

477 U.S. at 248.

It is a "fundamental maxim. . . that on a motion for summary

judgment a court cannot try issues of fact; it can only determine

whether there are issues to be tried."  Donahue, 834 F.2d at 58

(internal quotation marks omitted). "Credibility determinations,

the weighing of the evidence, and the drawing of legitimate

inferences from the facts are jury functions, not those of a

judge. . . ruling on a motion for summary judgment. . . ."

Anderson, 477 U.S. at 255.   "If, as to the issue on which
summary judgment is sought, there is any evidence in the record
from any source from which a reasonable inference could be drawn
in favor of the nonmoving party, summary judgment is improper."
Cronin v. Aetna Life Ins. Co., 46 F.3d 196, 203 (2d Cir. 1995).


## DISCUSSION

The Plaintiff GDG has moved for summary judgment on the
grounds that: (1) Elemar has failed to pay the open account as
agreed, (2) Elemar accepted the shipped materials, (3) Elemar
failed to provide notice of non-conforming goods within a
reasonable amount of time, and (4) Elemar acknowledged the full
debt in a fax response to a letter sent to the Defendant Elemar
by the Plaintiff.

The Defendant Elemar maintains that there is substantial
disagreement surrounding many of the facts that are material to
the Plaintiff's contract claim.  Specifically, the Defendant
contends that: (1) no contract was formed because the unsolicited
shipment of materials from GDG to Elemar did not conform to the
prior practices and conduct of the parties, i.e., that GDG would
only ship goods that the Defendant had ordered, (2) Elemar did
not accept the materials shipped, (3) even if there had been
acceptance, Elemar put GDG on notice that the materials were non-
conforming to the particular needs of the Defendant, (4) the
reply fax sent by Elemar to the Plaintiff was merely a

-8-

restatement of the amount in dispute and not an acknowledgment of debt owed to GDG, and (5) Elemar paid in full invoice 345.

As further explained below, the Court agrees with the Defendant that there are genuine issues of material fact in dispute.  For that reason summary judgment is not appropriate in this case.

## I. Choice of Law – Contracts for the International Sale of  Goods

Both parties have proceeded on the basis that the United Nations Convention on Contracts for the International Sale of Goods, Apr. 11, 1980, S. Treaty Doc. No. 98-9 (1983) 1489 U.N.T.S. 3, 19 I.L.M. 668 (1980)("CISG") governs this dispute. The CISG applies to contracts for the sale of goods between parties whose places of business are in different States when those Contracting States are signatory countries.  CISG, Art. 1, 19 I.L.M. at 672.  Both the United States and Italy are signatory States to the CISG.[3]  The CISG was adopted to govern "the formation of the contract of sale and the rights and obligations of the seller and the buyer arising from such a contract."  CISG, Art. 4, 19 I.L.M. at 673.

The CISG "is a self-executing treaty that creates a private right of action in federal court."  Genpharm Inc. v. Pliva-

---

[3] Italy signed the CISG on September 30, 1981, ratified it on December 11, 1986, and entered it into force on January 1, 1988.  The United States signed the CISG on August 31, 1981, ratified it on December 11, 1986, and entered it into force on January 1, 1988. *Status: 1980 United Nations Convention on Contracts for the International Sale of Goods*, United Nations Commission on International Trade Law, http://www.uncitral.org/uncitral/**en/uncitral_texts/ sale_goods/1980CISG_status.html**.

Lachema a.s., 361 F.Supp.2d 49, 54 (E.D.N.Y. 2005)(citing Delchi
Carrier SpA v. Rotorex Corp., 71 F.3d 1024, 1027-28 (2d Cir.
1995)). "[T]he CISG is a treaty, and thus federal law, and under
the Supremacy Clause, it preempts any inconsistent provisions of
state law." Usinor Industeel v. Leeco Steel Prods., Inc., 209
F.Supp.2d 880, 884 (N.D. Ill. 2002); see also, Asante
Technologies, Inc. v. PMC-Sierra, Inc., 164 F.Supp.2d 1142, 1147
(N.D. Cal. 2001).

    Parties can choose to be bound by other sources of law by
affirmatively opting out of the CISG. Delchi, 71 F.3d at 1027 n.
1; BP Oil Int'l, Ltd. v. Empresa Estatal Petroleos de Eduador,
332 F.3d 333, 337 (5d Cir. 2003). The CISG will apply, however,
if the agreement is silent as to choice of law and both parties
are located in signatory nations. Delchi, 71 F.3d at 1027 n. 1;
St. Paul Guardian Ins. Co. v. Neuromed Med. Sys. & Support, No.
00 Civ. 9344(SHS), 2002 WL 465312, at *3 (S.D.N.Y. Mar. 26,
2002).

    Both the Plaintiff and the Defendant are located in
signatory countries and both parties acknowledge and support the
application of the CISG to the issues presented in the
Plaintiff's Complaint. No documentation or other evidence has
been produced which would preclude the application of the CISG
and the Court concludes that the CISG does apply in this case.

**II. Contract Formation**

Under the CISG, the formation of a contract "'may be proved by any means. . .' and 'any evidence that may bear on the issue of formation is admissible.'" Claudia v. Olivieri Footwear Ltd., No. 96 Civ. 8052(HB)(THK), 1998 WL 164824, at *5 (S.D.N.Y. Apr. 7, 1998) (citing CISG, Art. 11 [19 I.L.M. at 674]). "The CISG's lack of a writing requirement allows all relevant information into evidence even if it contradicts the written documentation." Id. (internal quotation marks omitted). The CISG further provides that "[t]he parties are bound by any usage to which they have agreed and by any practices which they have established between themselves." CISG, Article 9(1), 19 I.L.M. at 674.

According to the Plaintiff, "[t]he shipment and invoicing by G.D.G. srl and subsequent acceptance of the shipment by the Defendant constituted a regular, established business practice, evidencing the existence of a contract under CISG." (Dkt. # 25-1, p. 8). The Plaintiff refers to this contract as an "open account," meaning "an account of credits, debits, receipts, and expenditures between two individuals or companies, usually providing for settlement at the end of specified accounting periods." (Dkt. # 48, pp. 7-8). The Plaintiff further asserts that "[t]he contract for the open account called for Defendant to pay by wire transfer in U.S. dollars no less than 120 days after date of shipment." (Dkt. # 25-1, p. 2). The Plaintiff's factual assertions concerning the formation of a contract between GDG and

Elemar are supported by an affidavit signed by the Plaintiff
Michele Riccitelli and by copies of nine invoices and shipping
forms, as well as copies of correspondence between the parties,
attached to that affidavit.[4]

For its part, the Defendant Elemar disputes the existence of
an "open account" contract with GDG.  The Defendant asserts that
"[i]n accordance with their prior conduct, GDG would only ship
goods that the defendant ordered" and that "[e]ach of those
invoices [numbered 18, 64, 102, 144, 152, 220, 266 and 377[5]]
represents a shipment of stone goods that the defendant never
ordered from GDG."[6]  (Dkt. # 47, p. 2).  The Defendant goes on to
claim that Elemar did not accept the stone goods reflected in
those eight invoices.  "To the contrary, the goods were rejected
by the defendant, and notice of the rejection was sent by Elemar
to GDG, on the basis that the goods contained in each shipment
were so defective that they were unusable in the defendants [sic]
business."  (Dkt. # 47, p. 3).

---

[4]The Plaintiff's Local Rule 56(a) 1 Statement also refers to various discovery requests and responses.  It does not appear that any of these discovery materials were filed with the Court and thus they cannot be considered for purposes of determining the Plaintiff's summary judgment motion.  See Holloway v. John E. Smith's Sons Co., Division of Hobam, Inc., 432 F.Supp. 454, 456 (D.S.C. 1977) ("[B]efore [a] document may properly be used as [a] factual basis for a motion for summary judgment pursuant to Rule 56 it must be filed with the court. . . .")

[5]The Defendant's Memorandum in Opposition to Motion for Summary Judgment refers to invoice no. 277. (Dkt. # 47, p. 2).  Based on the evidence submitted by both parties, the Court concludes that the reference to invoice no. 277 is a typographical error and that the correct invoice number is 377.

[6]As to the ninth invoice at issue in this case, No. 345, Elemar maintains that "[t]he defendant paid this invoice on or about November 30, 2009 by way of check or other transfer."  (Dkt. # 47, p. 2).

Thus the Defendant denies that a contract with GDG was ever entered into with respect to eight of the nine invoices in question.  As was the case with the Plaintiff, the Defendant supports its factual assertions regarding contract formation with an affidavit and attached documentary evidence.  The Defendant's affidavit is signed by Earl Harris, the President of Elemar.  The attachments to Mr. Harris' affidavit include copies of quality control sheets for eight of the nine invoices in question.   Each of these sheets contains handwritten comments noting product defects.

As to the fundamental issue of contract formation, both parties rely on the provision in the CISG stating that "[t]he parties are bound by any usage to which they have agreed and by any practices which they have established between themselves." CISG, Article 9(1), 19 I.L.M. at 674.  There is total disagreement, however, as to what practices GDG and Elemar had established between themselves, and both parties have presented similar evidence in support of their conflicting contentions. The Court views this situation as a classic example of a material factual issue genuinely in dispute.  "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. . . ruling on a motion for summary judgment. . . .." Anderson, 477 U.S. at 255.  Since "there is. . . evidence in the record. . . from which a reasonable inference could be drawn in

favor of the nonmoving party, summary judgment is improper."

Cronin, 46 F.3d at 203.  See Warrior Tombigbee Transp. Co., Inc.

v. M/V Nan Fung, 695 F.2d 1294, 1297 (11th Cir. 1983) ("Given the

ambiguities in the record, the parties' conflicting versions of

the facts, and the competing factual inferences arising from the

contested facts, the only thing clear is that this is an

inappropriate case for summary disposition.").

**III. Other Material Facts in Dispute**

The Plaintiff's action is premised on the contention that

"[u]nder the CISG, the entity represented by Plaintiff, G.D.G.

srl, had a contract with the Defendant for an open account to

ship requested materials."  (Dkt. # 25-1, p. 7).  The Court has

concluded that the material factual issue of the parties'

established practices, which is central to the issue of contract

formation, is genuinely in dispute.  Since summary judgment can

be granted only upon a showing "that there is no genuine issue as

to any material fact. . . .," Fed. R. Civ. P. 56 (c)(2), that

conclusion in and of itself requires the denial of the

Plaintiff's motion.  See No Oilport! v. Carter, 520 F. Supp. 334,

372 n. 13 (W.D. Wash. 1981) ("[O]ne genuine issue of material

fact is sufficient to preclude summary judgment. . . .").  The

Court notes, however, that there are other material factual

issues that are also genuinely in dispute.

The issues of whether and when the Defendant notified GDG

that the goods shipped under invoices nos. 377, 18, 64, 102, 144,

-14-

151, 220, and 266 were non-conforming and were, for that reason,

being rejected by Elemar are in dispute.  Both parties have

provided affidavits and documentary evidence (e.g., invoices,

quality control sheets)in support of their respective

contentions.  Likewise the parties have presented conflicting

evidence concerning the disputed issue of whether or not the

Defendant made payment for invoice 345.

The parties also disagree as to the interpretation of the

January 28, 2004 fax reply to the Plaintiff from the President of

Elemar, Earl Harris.  According to the Plaintiff, this document

"demonstrated an unequivocal, general acknowledgement of the

debt."  (Dkt. # 25-1, p. 12).  According to Mr. Harris, that

reply was "not intended to be an admission of a debt," but was

"intended. . . to clarify the amount that was in dispute between

the parties."  (Dkt. # 47-1, p. 2).  The Plaintiff acknowledges

that "[t]here are several logical interpretations of the phrase

[contained in Mr. Harris' fax reply] 'the following invoices are

open on E.N.E. accounts payable,'" and then suggests that "the

most consistent conclusion is that Defendant acknowledged the

debt in this fax."  (Dkt. # 48, p. 10).  "Whether [Plaintiff's]

interpretation or that of defendant[] best captures the meaning

of [Harris'] statement is not properly decided by. . . the

District Court on a motion for summary judgment. . . . The choice

between plausible interpretations of [Harris'] remarks is a

question of fact to be resolved by a jury." <u>Sassaman v. Gamache</u>, 566 F.3d 307, 313 (2d Cir. 2009).

For purposes of a summary judgment motion, "[a] fact is material. . . if it might affect the outcome of the suit under governing law." <u>Overton v. New York State Division of Military and Naval Affairs</u>, 373 F.3d 83, 89 (2d Cir. 2004)(internal quotation marks omitted). It is evident that the disputed factual issues identified above, in addition to the disputed factual issue concerning the parties' established practices, might affect the outcome of the Plaintiff's suit and are, therefore, material. These additional material factual issues genuinely in dispute also warrant the denial of the Plaintiff's motion for summary judgment.

## CONCLUSION

For the foregoing reasons, the defendant's Motion for Summary Judgment (**Dkt. # 25)** is **DENIED.**

**SO ORDERED** this 11th day of September, 2010.

_____/s/ DJS_____

**DOMINIC J. SQUATRITO**
**UNITED STATES DISTRICT JUDGE**